IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| D.K., *Individually and as* | § | |
| *Next Friend of B.C.,* | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:23-CV-25 |
| | § | |
| TAD PSHIGODA, M.S., J.C., | § | |
| RAGAN WATSON, Individually and | § | |
| in his Official Capacity as a Coach of | § | |
| PERRYTON INDEPENDENT SCHOOL DISTRICT, | § | |
| and PERRYTON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendants. | § | |

## ORIGINAL COMPLAINT

Plaintiff D.K., individually and as next friend of B.C., Plaintiff's minor son, through her attorneys of record the Marsh Law Firm PLLC and Stockard, Johnston, Brown, Netardus, & Doyle, P.C., files this Original Complaint and pleads the following:

### I.   NATURE OF ACTION

1.       On or about February 21, 2021, in a Perryton High School ("PHS") locker room, PHS basketball player Defendant Tad Pshigoda sexually assaulted teammate B.C. three times. Defendant Ragan Watson, a coach ("Coach Watson"), was present and able to stop the abuse, but did nothing. Most, if not all, of the members of the basketball team were also present and cheered Defendant Pshigoda on as he perpetrated the premeditated sexual assaults. Two PHS basketball players, Defendants M.S. and J.C., working in coordination with Defendant Pshigoda, videotaped the sexual assaults on their smartphones. Defendant M.S. or Defendant J.C. or both posted the videos on snapchat. Defendant Pshigoda pleaded guilty to assault with bodily harm.

2.      Defendant Perryton Independent School District ("PISD") learned of the incident by at least June 2021. Upon learning of the incident, Defendant PISD was obligated to investigate and take action to sanction those responsible, and to assist B.C. with his recovery. Rather, Defendant PISD chose to sweep the grievous criminal behavior under the rug, treating it as common roughhousing among boys. Defendant PISD failed to discipline the culpable boys involved in any meaningful way, and then undertook a mean-spirited and illegal scheme to retaliate against B.C. and his family, ostracizing and blackballing them. This retaliation culminated in the late summer of 2022, when the PISD board of trustees denied B.C.'s and his younger brother's applications to remain PISD transfer students in the 2022–2023 school year. Both brothers had stellar academic performances, unblemished disciplinary records, good attendance records, and the support of teachers and administrators who knew them best, making the retaliatory motive for the denials obvious.

3.      The acts and omission averred herein paint an ugly picture and ground five claims for relief: (1) common law assault against Defendant Pshigoda; (2) production of child pornography in violation of 18 U.S.C. Section 2255 against Defendants Pshigoda, M.S., J.C., and Coach Watson ("Section 2255" or "Child Sex Abuse Claims"); (3) distribution of child pornography in violation of 18 U.S.C. section 2255 against Defendants M.S. and J.C.; (4) violation of Title IX against Defendant PISD for failing to provide equal opportunity in education to B.C.; and (5) Title IX retaliation against Defendant PISD.

4.      Plaintiff brings this action to obtain some semblance of justice, and to compel Defendant PISD to change its policies and practices to prevent such criminal conduct from occurring again.

## II.   <u>JURISDICTION AND VENUE</u>

5.      This Court has subject matter jurisdiction over the child pornography claims and Title IX claims pursuant to 28 U.S.C. Section 1331 because those claims arise under the laws of the United States. Plaintiff further invokes the Court's pendent jurisdiction pursuant to 28 U.S.C. Section 1367 over the assault claim.

6.      Venue is proper pursuant to 28 U.S.C. Section 1391(b) because all Defendants reside in this judicial district and are residents of the State of Texas, and because all or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

7.      Defendant PISD was given notice of the Title IX claim in June 2021 and of the Title IX claim (again) and the Title IX retaliation claim on January 3, 2023, thus satisfying the "notice of claim" requirement for suing a Texas school district.

## III.   <u>TRIAL BY JURY</u>

8.      Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all claims and issues.

## IV.   <u>PARTIES</u>

9.      Plaintiff D.K., the next friend of B.C., is B.C.'s mother. B.C., a minor, is 17 years old. D.K. and B.C. reside in the Northern District of Texas. D.K. and B.C. are Texas citizens.

10.      Defendant Tad Pshigoda resides approximately ten miles southwest of Perryton, Texas and is a Texas citizen.

11.      Defendant M.S. is a minor approximately 17 years old and resides in Perryton, Texas. Defendant M.S. is a Texas citizen.

12.      Defendant J.C. is a minor, approximately 17 years old and resides in Perryton, Texas. Defendant J.C. is a Texas citizen.

13.     Defendant Coach Watson resides in La Grange, Texas and is a Texas citizen.

14.     Defendant PISD is a Texas school district located in Perryton, Texas.

## V.     FACTUAL ALLEGATIONS

**A.  PISD Has a Policy, Practice, and Culture of Allowing and Condoning Sexual Hazing of Student Athletes.**

15.     During the investigation of the sexual hazing incidents detailed herein, multiple witnesses, including Defendant Pshigoda and his father, admitted sexual hazing has been routine in the PISD Athletic Department for several decades.

**B.  B.C. Transfers to PISD.**

16.     In the late summer of 2019, B.C. transferred to PISD from Booker Independent School District. In 2020, B.C.'s younger brother transferred to PISD. Both boys were exceptionally good students and transferred to take advantage of the better academic opportunities a larger school district offers.

**C.  Repeated Sexual Assault by a Teammate in the Locker Room, of which a Coach Had Full Knowledge, and which Other Teammates Encouraged.**

17.     B.C. was in eighth grade when he entered PISD. The following year, as a freshman, he played on the varsity and junior varsity basketball teams.

18.     **First Sexual Assault**—On February 21, 2021, after basketball practice, B.C. was shooting baskets in the school gym. The rest of the team was in the locker room. Several of B.C.'s teammates came out to the gym and repeatedly and persistently urged B.C. to come into the locker room. B.C. was apprehensive, but eventually agreed. As B.C. approached the locker room, he saw the team had formed a tunnel into the locker room. Assistant football coach Defendant Ragan Watson was standing at the front of the tunnel with a smirking smile on his face.

4

19.     Once in the locker room, several teammates tackled B.C. Defendant Pshigoda dragged B.C. to the corner of the locker room, pinned B.C. on his back, and straddled B.C. at his upper chest. Defendant Pshigoda then began thrusting his crotch in a violent humping motion into B.C.'s face. Team members cheered Defendant Pshigoda on as he sexually assaulted B.C.

20.     Defendant Coach Watson was present and watched the sexual assault, a fact confirmed by Athletic Director head football coach Kurt Haberthur ("AD Haberthur") in several post-incident meetings with B.C.'s parents and in another with B.C. alone. Defendant Coach Watson did nothing to prevent or stop the sexual assault.

21.     **Second Sexual Assault**—Approximately ten to fifteen minutes after the first sexual assault ended, B.C. was on his hands and knees cleaning candy and paper off the locker room floor from the breaking of a pinata. B.C. was wearing gym shorts. As B.C. was finishing the cleanup, Defendant Pshigoda nodded to Defendant M.S. to begin recording the assault on a smartphone. Defendant Pshigoda then approached B.C. from behind and shoved the pinata stick into B.C.'s anus through B.C.'s gym shorts. B.C. lunged forward to avoid further penetration and screamed "No."

22.     **Third Sexual Assault**—B.C. got dressed. As B.C. was leaving the locker room, Defendant Pshigoda again approached him from behind with the pinata stick. This time, Defendant Pshigoda pulled B.C.'s sweatshirt up and violently rammed the stick down the back of B.C.'s jeans, while shoving B.C. to the ground. Defendant Pshigoda's butt landed on B.C.'s head, smashing B.C.'s head against the concrete floor. B.C. and Defendant Pshigoda wrestled for a few moments, until Defendant Pshigoda placed B.C. into a frontal headlock. Defendant Pshigoda told B.C. to "tap out," the sign of surrender, which B.C. ultimately did.

**D.   The Posting of Videos of the Sexual Assaults on Social-Media.**

23.    Defendant M.S. recorded the first and second sexual assaults on his cellphone. Defendant J.C. recorded the third sexual assault on his cellphone. Defendant M.S. and/or Defendant J.C. shared the videos on Snapchat with boys on the junior varsity and varsity basketball team. To date, the videos remain published and accessible in the basketball team's Snapchat group.

24.    These videos constitute child pornography as defined by applicable law. The production and distribution of these videos violate several criminal child sex abuse statutes, which are predicates for a civil claim against Defendants Pshigoda, M.S., J.C., and Coach Watson pursuant to United States Code Title 18, Section 2255. Under section 2255, a plaintiff is entitled, at a minimum, to $150,000 liquidated damages from each defendant, as well as attorney fees, and costs.

**E.   The Dramatic Change in B.C.'s Demeanor and Behavior and His Parents' Discovery of the Sexual Assaults.**

25.    B.C.'s parents knew nothing of the sexual assaults for several months. However, Plaintiff and her husband did notice a dramatic change in B.C.'s demeanor and personality. B.C. slept much more than usual and secluded himself in his room. B.C.'s interest in sports (his usual passion) waned, and he no longer kept his room clean and tidy. B.C. became rebellious and defiant. B.C. refused to talk about the changes in his demeanor and personality.

26.    On or about May 2, Plaintiff scrolled through B.C.'s cellphone looking for insight and discovered videos of two of the sexual assaults.

27.    B.C. pleaded with his parents not to tell the school because he did not want to be labeled a snitch or blackballed. B.C.'s parents were also afraid of what the fallout might be if they shared what they knew. For several weeks, neither B.C. nor his parents told anyone.

**F.  B.C.'s Parents' June 2021 Meeting with the Pshigodas.**

28.     On or about June 24, Brian Pshigoda, Defendant Pshigoda's father, called B.C.'s father and asked to meet. During the call, Mr. Pshigoda attempted to extort B.C.'s father, stating that he had unspecified "dirt" on B.C. he could make public if needed.

29.     On or about June 27, B.C. and his parents met with Defendant Pshigoda and his parents. In this meeting, the Pshigodas downplayed the seriousness of the three sexual assaults, saying it was just "boys being boys." Mr. Pshigoda told B.C. and his parents this sort of thing happened when he attended PISD, and Defendant Pshigoda said the same and worse had happened to him.

30.     In later interviews with the Perryton Police Department, Defendant Pshigoda and teammate Levi Stevens confirmed that assaults of this type or worse have routinely occurred in the PHS locker rooms.

**G.  June 2021 Notice to PSID of the Sexual Assaults.**

31.     Two days *before* meeting with B.C. and his parents, the Pshigodas had reported the sexual assaults to AD Haberthur, but did not inform B.C's parents or B.C. of this in the meeting. Thus, B.C. and his parents were surprised when on, June 28th, the day after meeting with the Pshigodas, High School Principal Ross Sproul ("Principal Sproul") called Plaintiff to share what he knew about the sexual assaults and inform her that he was in possession of two of the assault videos.

32.     Although Defendant PISD, as a mandatory reporter, is legally obligated to report child sexual abuse within 48 hours of notice (Tex. Fam. Code Ann. Sec. 261.1010(b)), it delayed reporting the sexual assaults almost four weeks. Defendant PISD also failed to report Defendant

Coach Watson's involvement to the Texas Education Agency ("TEA"), as it was legally obligated to do. *See* Tex. Fam. Code Ann. § 261.101(b).

33.    On information and belief, Defendant Coach Watson has never been investigated or disciplined by the TEA, and he continues teaching and coaching in La Grange, Texas.

**H.  Criminal Investigation and Guilty Plea of Defendant Pshigoda.**

34.    In July and August 2021, the Perryton Police Department investigated the sexual assaults, interviewing numerous people, including B.C. and Defendants Pshigoda and M.S. Not everyone interviewed cooperated; Investigating Officer Sergeant J. Ortiz terminated the interview of PISD school board member Ramon Vela ("School Board Member Vela") and his son for "obvious lack of cooperation." (*See* Perryton Police Department Offense/Incident Report ("Police Report") attached hereto). School Board Member Vela attended PHS with Mr. Pshigoda and AD Haberthur.

35.    Following his investigation, Sergeant Ortiz recommended Defendants Pshigoda and M.S. be charged with the offense of Hazing, Texas Education Code Section 37.152, "due to the intentional, knowing, or reckless act, occurring on campus of an educational institution and the physical brutality encouraged, aided, and directed against a student that they are affiliated with." (*See* Police Report.)

36.    On information and belief, following the Perryton Police Department's investigation, Defendant Pshigoda pleaded guilty to a class A misdemeanor of assault with bodily harm and was sentenced to six-months of probation. On information and belief, Defendants M.S. and J.C. have not been criminally charged.

**I. Defendant PISD's Wholly Inadequate Investigation and Slap-on-the-Wrist Punishment.**

37.     Defendant PISD performed a cursory and wholly inadequate investigation, which resulted in nothing more than a slap on the wrist to the perpetrating teammates.

38.     On information and belief, Defendant PISD has not prepared a written report regarding its investigation.

39.     The only punishments meted out were Defendant Pshigoda's ten-day in-school-suspension, Defendant M.S.'s five-day in-school-suspension, and Defendant J.C.'s three-day in-school-suspension, during which the Defendants worked in a classroom apart from other students and could not participate in athletic scrimmages or games.

40.     The PISD Athletic Department's Athletic Code of Conduct waxes poetic about holding student athletes to a higher standard than non-athlete students, the high importance of an athlete's "character," and the serious consequences of a student athlete not meeting this high standard.

41.     Defendant PISD's 2020–2021 Athletic Code of Conduct states:

> **"Athletes will be expected to take personal responsibility for their actions and will be held accountable for their actions.** We will be disciplined in: actions, work habits, personal/collective responsibilities and communication."

(Emphasis added).

42.     And further states:

> "Perryton ISD makes athletic activities available as an extension of the regular school program, with this important difference: **participation in the regular curriculum is a right afforded to each student, while participation in the athletic program is a privilege that carries additional expectation for acceptable conduct**. Students engaging in athletic activities represent not only themselves, but Perryton ISD as a whole. Student-athletes are not only recognized on the playing fields or courts but also in the community as Rangers/Rette. For this reason, **their behavior must be exemplary and reflect the finest attributes of Perryton ISD at all times and places**. We will develop athletes and a product that

9

give Perryton ISD and the community a since [sic] of pride in what a Ranger/Rette
stand for."

(Emphasis added).

43.    The Athletic Code explains that the three bases of the athletic program are
"Character" "Class" and "Effort." Regarding "Character," the Athletic Code states the athletic
program will teach student athletes "character qualities that will serve them in all phases of their
life…Character will define who our programs are and what they become…Athletes will be held
accountable for their character."

44.    The Athletic Code warns that there are no excuses for bad behavior: "[f]ailure to
meet expectations…for any or all of these [bases, including Character,] by athletes or parents could
result in removal from a sport or athletic program,"; the athletic program's "**philosophy doesn't
allow for any excuses for anyone at anytime [sic]**." (Emphasis added).

45.    The Athletic Code gives the head coach authority to "suspend an athlete within
their season as a disciplinary action . . . . A suspension due to a Major Infraction of Athletic Policy
such as . . . criminal charges . . . carries over from one sport to the next if the suspension has not
been completed."

46.    The Athletic Code described "PROHIBITED CONDUCT" (capitalization in
original) as including fighting and/or assault and hazing and/or bullying.

47.    Where, as here, there are multiple assaults that constitute "Major Violations", the
Athletic Code provides that "the student-athlete and the athlete's parent/legal guardian will be
notified of the violation and the disciplinary action. If the athlete and/or parents will not agree to
the disciplinary action set forth the athlete could be subject to further punishment or removal from
the sport and/or athletic program."

48.    As to social media, the Athletic Code warned:

10

"Facebook, Twitter and other social media sites have increased in popularity globally, and are used by the majority of student-athletes in one form or another. Student-athletes should be aware about inappropriate pictures, videos, and comments affect the perception of the student-athlete, the athletic department and Perryton ISD. This can also be detrimental to the student-athlete's collegiate and employment future. Social Media could be considered proof of a rule's violation."

49.     Despite the criminal conduct constituting "Major Violations," on information and belief, the PISD Athletic Department imposed no sanction on Defendants Pshigoda, M.S., or J.C., in clear conflict with its own written policy.

50.     As troubling, if not more, is that in the months and years following the criminal assaults PSID officials have repeatedly lauded Defendant Pshigoda for his character.

51.     School counselor Paige Waide ("Counselor Waide") advocated for Defendant Pshigoda (i) to be inducted into the PHS National Honor Society, for which  two qualifications are character and citizenship and (ii) to be named "Best Citizen".

52.     In May 2022, PHS gave Defendant Pshigoda the basketball team's "Fighting Heart" award, which is intended to recognize character.

53.     In December 2022, AD Harberthur, in a Twitter post, lauded Defendant Pshigoda for his character, congratulating him on receipt of a college scholarship offer: "Awesome! Great player! High Character!"

54.     Much as Penn State did when it ignored and protected pedophile football coach Sandusky, and Baylor when it failed to take seriously allegations of multiple sexual assaults by football players, Defendant PISD chose to protect its institutional reputation and the perpetrators, rather than punish the perpetrators, remediate the harm caused to the victim, and change the culture, policy and practice allowed and encouraged the sexual assaults.

55.     The obstinate refusal of PISD to condemn the assaults or reform it's culture, while circling the wagons to laud the primary perpetrator for his "character," reflects a dismissive,

"institution-first" attitude expressed by Mr. Pshidgoda, Board Member Vela, AD Haberthur, and other school officials to B.C., his parents, and the police department investigator with the mantras "it's just boys being boys", "let's move on", and "Ranger Pride Never Dies".

**J.  Retaliation Culminating in Denial of 2022–2023 Transfer Requests.**

56.     Defendant PISD also engaged in gaslighting, seeking to deflect responsibility by blaming B.C. and his parents. Such conduct constitutes blatant Title IX retaliation—taking punitive action in response to a Title IX complaint. Defendant PISD's retaliation is ongoing and has taken multiple forms.

57.     Hardly a day has gone by since the assaults that B.C. and/or his younger brother hear shameful, hurtful, and slanderous statements from other students, and even more troubling, adults. Their classmates told them their transfer requests would be denied. B.C. was called a snitch, liar, alcoholic and drug abuser, and homosexual. He was accused of drinking with a teacher and enticing other students to go to the teacher's house. These false and vicious rumors followed B.C. to his new school in Follet. There, the rumor is that B.C. is at a new school because he raped a boy in Perryton.

58.     In October of 2022, the PHS cross-country team yelled obscenities at B.C. from their bus and heckled him at a cross-country race. More recently, a group of PISD students attended a Follett football game to heckle B.C. The Follett principal kicked the PISD students out of the stadium and subsequently called Defendant PISD to report the incident. Nonetheless, the same group of PISD students later attended a Booker basketball game to heckle B.C. Just recently, on or about January 26, 2023, a group of B.C.'s former PHS classmates added B.C. to a Snapchat group. Members of the Snapchat group then sent the group messages stating "F*ck a n****a named [B.C.]" and "Let's sue the school again [B.C.]."

59.     Constant, organized, ongoing student attacks of this sort could not happen without implicit or explicit school sanction and support.

60.     Neither Counselor Waide nor counselor Valerie Merkel, ever checked in with B.C. concerning the abuse, even though it is now well known that sexual abuse can and very often does cause serious, immediate, and lasting emotional and psychological harm, especially when perpetrated against a minor.

61.     At the end of the 2022 school year, B.C. requested to meet AD Haberthur. B.C. told AD Haberthur about the continued harassment and the emotional toll it was taking on him. AD Haberthur dismissed B.C.'s plea for help, telling B.C., "it's time you forget it and move on."

62.     To continue as a PISD transfer student, a student must apply and be approved each school year. B.C. and his younger brother applied and received approval in the summer of 2021 to continue as transfer students in the 2021–2022 school year. Specifically, on August 5, 2021, per the PISD transfer policy at that time, the Superintendent approved both transfer applications.

63.     On or about May 9, 2022, B.C. and his younger brother applied to transfer for the 2022–2023 school year. As transfer students at Perryton schools, B.C. and his brother were model students, ranking fourth and second in their classes respectively. They received no disciplinary action during their time at PISD, and had excellent attendance records. In short, they met or exceeded all criteria for transfer set forth in Defendant PISD's written transfer policy.

64.     For instance, the "Application for Transfer for a Non-Resident Student 2022–23 School Year" provided in relevant part:

> "The student must maintain acceptable levels of attendance and compliance with District rules and regulations, including the Student Code of conduct, throughout the entire school year. Acceptable levels are defined as:

"a. Attendance that does not place the student at risk of losing credit under Education Code 25.092 or require the District to warn the parent or the student of truancy proceedings under Education Code 25.095; and

"b. Compliance with the District's rules and regulations, including the Student Code of Conduct, such that offenses result in removal to a disciplinary alternative education program (DAEP) or expulsion, and no more than 2 referrals are made within any grading period for other misconduct."

65.     The Application further provided:

"The district will review student records relating to attendance, academics, discipline (i.e. expulsion, DAEP placement, etc.) and special services (i.e. IEP, GT, ESL, bilingual, 504, or dyslexia)…

* * *

"Students who transfer into the District must follow all rules and regulations of the District including, but not limited to, District policies and regulations; the Student Code of Conduct; the Student Handbook; and attendance and grade requirements. Failure to fulfill any of these responsibilities may result in rejection of the transfer request for the following year."

66.     Defendant PISD's "District Innovation Renewal Plan of 2022" stated, "In approving transfer requests, the student's disciplinary history, work habits, and attendance records are also evaluated."

67.     On June 6, 2022, the PISD School Board voted to amend the transfer policy: (1) to usurp from the superintendent or his designee (usually a principal) the authority to approve transfers; and (2) to remove all factors to be considered in considering transfers, including a student's disciplinary history and attendance records.

68.     Specifically, the School Board revised the "Authority" provision of the policy as follows (bold-faced words were added and stricken words deleted): "**The Board retains the authority to** ~~Superintendent is authorized to~~ accept or reject any transfer request **and shall take** ~~provided that~~ such action ~~is~~ without regard to race, religion, color, sex, disability, national origin or ancestral language."

14

69.     The School Board also **deleted** the following provision concerning factors for consideration: ~~"Factors: In approving transfers of students who are not children of District employees, the Superintendent or designee shall consider availability of space and instructional staff and the student's disciplinary history and attendance records."~~

70.     The School Board further deleted the following sentence under the heading "Transfer Agreements:" ~~"Violation of the terms of the [written transfer agreement] may result in a transfer request not being approved the following year."~~

71.     At the same June 6, 2022 meeting, immediately after changing the policy, the School Board exercised its new "authority" to deny B.C.'s and his brother's transfer applications, without (i) considering any criteria set forth in the 2022–2023 Transfer Application or criteria set forth in the pre-amendment Transfer Policy (on which B.C. and his parents relied in applying for transfer), or (ii) considering the support of the administration, including Principal Sproul and Junior High School Principal Sandy Wheeler.

72.     School Board Member Vela, whose son was questioned by the Perryton Police Department during its investigation of the sexual assaults, and who attended PHS as a student with Mr. Pshigoda and Athletic Director Haberthur, voted to deny B.C. and his brother's transfer applications.

73.     At the same meeting, the School Board unanimously approved transfers for the nine other applicants.

74.     On or about June 7, 2022, the School Board issued a letter giving B.C. and his brother formal notice of the denial of their transfer applications. The letter gave no explanation for the denials. The letter was written on PISD letterhead and signed by School Board President Wes Beal. The letter read in pertinent part: "After review and careful consideration of your application,

the Perryton ISD Board of Trustees has voted to deny your transfer requests at this time." The same day, Plaintiff emailed Defendant PISD and requested the School Board identify the grounds for the denials. Plaintiff followed up several times but has received no explanation.

75.     Several days after the Board's denial of B.C. and his brother's transfers, on or about June 9, 2022, Defendant M.S.'s father spoke about the denials on his KXDJ radio show. In that broadcast, Defendant M.S.'s father made several false statements, including that B.C.'s parents had a history of district jumping, and that the police investigated and found Defendant Pshigoda and others' (including Defendant M.S.'s) conduct was not criminal. (Contra Police Report attached).

76.     Troubling too is that Defendant M.S. father claimed that unidentified School Board "sources" fed him this information, clear evidence that one or more School Board members discussed the transfer applications outside of a School Board meeting. Such conduct could violate the Open Meetings Act or student privacy rights.

77.     On or about August 30, 2022, the School Board continued its retaliatory action by rejecting B.C.'s grievance (essentially an appeal) of the June denial of the transfer applications.

78.     At a January 26, 2023 meeting, the Board removed any doubt about its retaliatory intent in denying the transfers, by approving one and denied two transfers while employing several elements of the policy it repealed in the June 2022 meeting. At that January 26, 2023 meeting, Assistant Superintendent Dr. Maria Gomez-Rocque recommended that the Board deny two of the transfer applications because of the students' excessive absences and tardies (grounds set forth in the old, stricken written policy). The Board followed the administration's recommendation, approving one and denying two transfers.

**J.  The Harm Caused by the Sexual Assaults and Retaliation.**

79.  The sexual assaults and their aftermath had a devastating effect on B.C. and his family.

80.  B.C. has suffered from insomnia, anxiety, difficulty trusting others, lack of appetite, lack of concentration, anger, extraordinary stress, and depression. B.C. feels isolated, helpless, and vulnerable. He now takes medication for depression and anxiety. B.C.'s brother has experienced many of the same symptoms.

81.  The quality of B.C. and his brother's education has drastically decreased because they now attend a much smaller, 1A school that does not have the educational opportunities of a 4A school like PISD. For instance, there is no pull-out GT, no AP, no pre-AP, no honors, fewer electives, and no robotics program. B.C.'s parents have experienced stress in their jobs, lost business, and experienced serious depression and anxiety due to the sexual assaults and their aftermath.

82.  As a result of the conduct described herein, B.C. has been forced to expend substantial sums, including costs of therapy and medication, and it is anticipated these costs will continue to be incurred well into the future.

## VI.  CLAIMS FOR RELIEF

**A.  FIRST CLAIM FOR RELIEF: ASSAULT AGAINST DEFENDANT PSHIGODA**

83.  Plaintiff incorporates all prior and subsequent paragraphs.

84.  On or about February 21, 2021, Defendant Pshigoda intentionally and recklessly caused physical contact with B.C. three times in the PHS locker room when Defendant Pshigoda knew or should reasonably have known B.C. would consider the contact offensive or provocative.

*See Martinez v. Pluma as Next Friend of A.C.V.*, No. 01-19-00411-CV, 2020 WL 7391699, at *2 (Tex. App.—Houston [1st Dist.] Dec. 17, 2020, no pet.).

85.     The assault caused B.C. physical pain and suffering as well as great embarrassment and emotional distress for which he is entitled to actual and punitive damages.

**B.  SECOND CLAIM FOR RELIEF: PRODUCTION OF CHILD PRONOGRAPHY IN VIOLATON OF 18 U.S.C. SECTION 2255 AGAINST DEFENDANTS PSHIGODA, COACH WATSON, M.S., AND J.C.**

86.     Plaintiff incorporates all prior and subsequent paragraphs.

87.     On February 21, 2021, in the PHS locker room, Defendants Pshigoda, Coach Watson, M.S., and J.C. together and separately employed, used, persuaded, induced, enticed, and coerced B.C., a minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, all in violation of 18 U.S.C. Section 2251(a).

88.     On or about February 21, 2021, in the PHS locker room, Defendants Pshigoda and Coach Watson, having custody and control over B.C., a minor, knowingly permitted and assisted B.C. and Defendant Pshigoda, both minors at the time, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, all in violation of 18 U.S.C. Section 2251(b).

89.     Defendants Pshigoda, Coach Watson, M.S., and J.C. intended that the visual depictions be transported in the United States by means or facility of interstate or foreign commerce, to wit, a cellphone and social media posting. Defendants M.S. and J.C. transported one or more of the three visual depictions in the United States by means or facility of interstate or foreign commerce, to wit a cellphone and social media.

**C. THIRD CLAIM FOR RELIEF: DISTRIBUTION OF CHILD PORNOGRAPHY IN VIOLATION OF 18 U.S.C. SECTION 2252A AGAINST DEFENDANTS M.S. AND J.C.**

90.     Plaintiff incorporates all prior and subsequent paragraphs.

91.     In or about February or March 2021, in Perryton, Texas, Defendants M.S. and J.C. knowingly transported by means or facility of interstate and foreign commerce which affected interstate or foreign commerce, to wit, by a cellphone and/or computer, depictions of the three sexual assaults, which constitute child pornography as defined 18 U.S.C. Section 2256 (8), in violation of 18 U.S.C. Section 2252A(a)(1).

92.     In or about February or March 2021, in Perryton, Texas, Defendants M.S. and J.C. knowingly received and distributed the child pornography described herein using means and facility of interstate and foreign commerce, to wit, a cellphone and/or computer, all in violation of 18 U.S.C. Section 2252A(a)(2).

93.     In or about February 2021, in Perryton, Texas, Defendants M.S. and J.C. knowingly possessed and knowingly accessed with intent to view a video depiction of the child pornography described herein that had been transported by means and facility of interstate or foreign commerce and in or affecting interstate or foreign commerce by means of a cellphone or computer, all in violation of 18 U.S.C. Section 2252A(a)(5).

**D. FOURTH CLAIM FOR RELIEF: TITLE IX VIOLATION AGAINST DEFENDANT PISD**

94.     Plaintiff incorporates all prior and subsequent paragraphs.

95.     Defendant PISD receives federal funds.

96.     Defendant PISD received actual notice of the sexual assaults by at least June 2021 and formal notice via letter from Plaintiff's counsel in January 2023.

97.     Defendant PISD had actual knowledge of the sexual assaults by virtue of Defendant Coach Watson being present and able to prevent or stop the abuse.

98.     It was Defendant PISD's practice and culture and de facto policy to allow and condone sexual hazing, assault, abuse, and harassment of student athletes.

99.     Defendant Watson, a coach at PISD, had the authority and ability to prevent, and once begun to stop the abuse.

100.    AD Haberthur is an alumnus of PHS, an assistant coach at PHS from 1998 to 2004, and since 2020, the PHS Athletic Director.

101.    Both Defendant Coach Watson and Athletic Director Haberthur were aware of the longstanding tradition of sexual hazing and were responsible for stopping it. They utterly failed to stop it, and in fact condoned it.

102.    AD Haberthur was responsible for holding the culpable students and Defendant Coach Watson accountable, but failed to do so. No disciplinary action was taken, contrary to the PHS Athletic Department's holier-than-thou public statements emphasizing the importance of student athletes demonstrating good character and the disciplinary consequences of failure to do so.

103.    The sexual assaults occurred in the PHS locker room shortly after practice. All harassers, including Defendants Pshigoda, M.S., J.C., and Coach Watson, as well as the other present basketball team members, were under Defendant PISD's control at the time.

104.    The sexual assaults constitute sex-based harassment. The sexual assaults included dry humping B.C.'s face and poking a sharp object into B.C.'s anus. The sexual assaults were videotaped, and the videos were distributed on social media.

105.    The sex-based harassment was so severe, pervasive, and objectively offensive that it barred B.C.'s access to an educational opportunity or benefit.

106.    Defendant PISD was deliberately indifferent to the sex-based harassment, as shown by

a.  its de facto policy, practice, and culture of allowing and condoning sexual hazing,

b.  AD Haberthur's and Defendant Coach Watson's awareness of this de facto policy, practice, and culture,

c.  Defendant Coach Watson's presence and complicity in the sexual assaults, and

d.  Defendant PISD's utter failure to (i) conduct a Title IX investigation; (ii) meaningfully discipline the perpetrators involved or Defendant Coach Watson; (iii) take steps to remediate the harm done to B.C.; or (iv) change its de facto policy, practice, and culture to prevent such sexual assaults from occurring again.

## E. FIFTH CLAIM FOR RELIEF: TITLE IX RETALIATION AGAINST DEFENDANT PISD

107.    Plaintiff incorporates all prior and subsequent paragraphs.

108.    Defendant PISD receives federal funding.

109.    Defendant PISD received actual notice of the sexual assaults in June 2021 and formal notice via letter from Plaintiff's counsel in January 2023.

110.    Plaintiff engaged in protected activity when he complained to Defendant PISD about:

a.  the sexual harassment;

b.  the school's failure (a) to conduct a meaningful investigation or (b) to take meaningful disciplinary action or any action at all against the students and coach involved;

    c.   the gaslighting, slander, and blackballing of B.C. and his family by PISD officials and School Board members; and

    d.   the denial of (a) B.C. and his brother's transfer requests, and (b) grievance of the denials.

111.    The gaslighting, slander, blackballing, refusal to provide B.C. with any therapeutic support or otherwise to remediate the harm caused him, and denial of B.C.'s transfer request and grievance of same, all constitute adverse action.

112.    The protected activity was the but-for cause of the adverse action, that is, the adverse action was taken in retaliation for the protected activity.

113.    The School Board and administrators knew of B.C.'s protected activity before taking adverse action.

114.    Retaliatory motive is shown by, among other things: (i) the School Board's amendment of the policy regarding transfers to strip it of any mention of a student's academic performance, overall behavior and attendance, made just before and in the same meeting in which Defendant PISD denied B.C. and his brother's transfer requests; (ii) the School Board's failure to consider or following school administrator and teacher recommendations that the transfer applications of B.C. and his brother be approved; (iii) the fact that several other 2022–2023 school year transfer requests were granted and none denied at that meeting; and (iv) the Board's reversion to prior practice of considering at it recent review of transfer student applications.

115.    The amendment of Defendant PISD's written transfer policy, which strips all factors that B.C. and his brother clearly relied on and met constitutes an official PISD policy and is itself retaliatory conduct that resulted in denial of the transfer requests (an adverse action).

116.   Defendant PISD demonstrated deliberate indifference through the adverse retaliatory actions and inactions described herein, especially given its knowledge that sexual hazing, assault, abuse, and harassment was part of the PHS Athletic Department's culture, custom, and practice for many years.

## VII.   PRAYER FOR RELIEF

Plaintiff prays for the following relief:

1.   As against Defendants Pshigoda, M.S., J.C., Coach Watson, damages for the emotional distress, pain and suffering in an amount to be determined at trial but in no event less than $2 million.

2.   As against Defendants Pshigoda, M.S., J.C., and Coach Watson liquidated damages in the amount of $450,000 from each, for the production and/or distribution of the three child sex abuse videos, or damages in amount to be proven at trial.

3.    As against all Defendants, out-of-pocket costs in an amount to be determined at trial.

4.   As against Defendant Pshigoda exemplary and punitive damages in an amount to be determined at trial.

5.   As against all Defendants, reasonable attorneys' fees, and costs.

6.   Any and all additional relief the Court deems fair and just.

Respectfully submitted,

Robert Y. Lewis (pro hac vice application forthcoming)
THE MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Floor
New York, New York 10001
309 North Main Street, Suite 10
Garden City, Kansas 67846
Phone – (620) 290-9084
Email – robertlewis@marsh.law

and

J. Daren Brown
STOCKARD, JOHNSTON, BROWN, NETARDUS, &
DOYLE, P.C.
1030 North Western
P.O. Box 3280
Amarillo, Texas 79106 (physical) 79116-3280 (box)
Off. Ph. 806.372.2202/806.373.3000
Fax. 806.379.7799
Email: dbrown@sjblawfirm.com

*/s /J.Daren Brown*
J. Daren Brown
**Attorneys for Plaintiffs**

# Perryton Police Department

## Offense / Incident Report

**GENERAL OFFENSE INFORMATION**          **Report Type:** Initial Report

| | | | |
|---|---|---|---|
| **Agency** | PERRYTON PD | **Location** | 1102 S JEFFERSON STREET |
| **Case #** | 07-0047-21 | | PERRYTON TX 79070 |
| **File #** | | | |
| **Description** | HAZING | | |
| **Incident Status** | ACTIVE | | |
| | | **From Date/Time** | 07/21/2021 10:08 |
| | | **To Date/Time** | 07/26/2021 10:10 |
| | | **Report Date** | 07/26/2021 11:54 |
| **Reporting Officer** | GONZALEZ, RAFAEL | **Initial Rep. Date** | 07/26/2021 11:54 |

**COMPLAINANT**

| Name | TEXAS, STATE OF | | | |
|---|---|---|---|---|
| Address | 21 SE 2ND STREET  PERRYTON TX 79070 | | | |
| | | | | Phone |
| Race | | Ethnic | Sex | DOB |
| Height | | Weight | Hair | Eyes |
| S.S.N. | __-__-__ | DL & St. | JRN# | |

**VICTIM(S)**

| Name | | | | |
|---|---|---|---|---|
| Address | | | | |
| | | | | Phone |
| Race | W | Ethnic | N | Sex | M | DOB |
| Height | | Weight | Hair | Eyes |
| S.S.N. | __-__-__ | DL.& St. | JRN# | |
| Type of Victim | INDIVIDUAL | Victim Of | NONE | Injury Type |
| Homicide/Assault Circumstance | | | | |

**SUBJECT(S)**

| Name | SPROUL, ROSS DANIEL | | | |
|---|---|---|---|---|
| Address | 3105 S BIRCH STREET  PERRYTON, TX 79070 | | | Phone 512-906-4223 |
| Race | W | Ethnic | N | Sex | M | DOB | 2/19/1974 (47) |
| Height | 6'00" | Weight | 215 | Hair | BRO | Eyes | BLU |
| S.S.N. | __-__-__ | DL & St. | ******** | JRN# | |
| Sub. Type | REPORTING PARTY | Arrest ID | | Citation # |
| Notes | | | | |

Case No:  07-0047-21

| Name | PSHIGODA, TAD C | | | | | | |
|------|------|------|------|------|------|------|------|
| Address | 12444 FM 3045 PERRYTON, TX 79070 | | | | Phone | 806-435-5954 | |
| Race | W | Ethnic | N | Sex | M | DOB | 9/29/2004 (16) |
| Height | | Weight | | Hair | | Eyes | |
| S.S.N. | ___-__-____ | DL & St. | | JRN# | | | |
| Sub. Type | SUSPECT | Arrest ID | | Citation # | | | |
| Notes | | | | | | | |

| Name | STEVENS, LEVI AUGUSTA | | | | | | |
|------|------|------|------|------|------|------|------|
| Address | 12490 CR M  PERRYTON, TX 79070 | | | | Phone | 806-228-9422 | |
| Race | W | Ethnic | N | Sex | M | DOB | 10/15/2002 (18) |
| Height | 6'06" | Weight | 145 | Hair | BRO | Eyes | BLU |
| S.S.N. | ___-__-____ | DL & St. | ******** | JRN# | | | |
| Sub. Type | WITNESS | Arrest ID | | Citation # | | | |
| Notes | | | | | | | |

| Name | | | | | | | |
|------|------|------|------|------|------|------|------|
| Address | _____5 | | | | Phone | | |
| Race | W | Ethnic | N | Sex | M | DOB | |
| Height | 6'03" | Weight | 250 | Hair | BRO | Eyes | BLU |
| S.S.N. | ___-__-____ | DL & St. | ******** | JRN# | | | |
| Sub. Type | PARENT | Arrest ID | | Citation # | | | |
| Notes | | | | | | | |

| Name | | | | | | | |
|------|------|------|------|------|------|------|------|
| Address | | | | | Phone | | |
| Race | W | Ethnic | N | Sex | F | DOB | |
| Height | 5'08" | Weight | 175 | Hair | BLN | Eyes | BLU |
| S.S.N. | ___-__-____ | DL & St. | ******** | JRN# | | | |
| Sub. Type | PARENT | Arrest ID | | Citation # | | | |
| Notes | | | | | | | |

| Name | PSHIGODA, BRIAN KEITH | | | | | | |
|------|------|------|------|------|------|------|------|
| Address | 12444 FM 3045 PERRYTON, TX 79070 | | | | Phone | 806-202-0020 | |
| Race | W | Ethnic | N | Sex | M | DOB | 2/20/1974 (47) |
| Height | 6'01" | Weight | 205 | Hair | BLN | Eyes | BLU |
| S.S.N. | ___-__-____ | DL & St. | ******** | JRN# | | | |
| Sub. Type | PARENT | Arrest ID | | Citation # | | | |
| Notes | | | | | | | |

Case No:  07-0047-21

| Name | PSHIGODA, TAMARCHENA | | | | | |
|---|---|---|---|---|---|---|
| Address | 12444 FM 3045 PERRYTON, TX 79070 | | | | Phone | - - |
| Race | W | Ethnic | N | Sex | F | DOB |
| Height | | Weight | | Hair | | Eyes |
| S.S.N. | ___-__-____ | DL & St. | | JRN# | | |
| Sub. Type | PARENT | Arrest ID | | Citation # | | |
| Notes | | | | | | |

| Name | VELA, KASON | | | | | |
|---|---|---|---|---|---|---|
| Address | 13143 CO RD 11 PERRYTON, TX 79070 | | | | Phone | - - |
| Race | W | Ethnic | H | Sex | M | DOB |
| Height | | Weight | | Hair | | Eyes |
| S.S.N. | ___-__-____ | DL & St. | | JRN# | | |
| Sub. Type | WITNESS | Arrest ID | | Citation # | | |
| Notes | | | | | | |

| Name | VELA, RAMON III | | | | | |
|---|---|---|---|---|---|---|
| Address | 13143 CO RD 11 PERRYTON, TX 79070 | | | | Phone | 806-434-0360 |
| Race | W | Ethnic | H | Sex | M | DOB | 6/20/1973 (48) |
| Height | 5'10" | Weight | 200 | Hair | BLK | Eyes | BRO |
| S.S.N. | ___-__-____ | DL & St. | ******** | JRN# | | |
| Sub. Type | PARENT | Arrest ID | | Citation # | | |
| Notes | | | | | | |

| Name | | | | | | |
|---|---|---|---|---|---|---|
| Address | | | | | Phone | - - |
| Race | W | Ethnic | N | Sex | M | DOB |
| Height | | Weight | | Hair | | Eyes |
| S.S.N. | ___-__-____ | DL & St. | | JRN# | | |
| Sub. Type | SUSPECT | Arrest ID | | Citation # | | |
| Notes | | | | | | |

| Name | SAMPLES, CHRISTOPHER EARL | | | | | |
|---|---|---|---|---|---|---|
| Address | 2901 S HARVARD STREET PERRYTON, TX 79070 | | | | Phone | 806-202-2600 |
| Race | W | Ethnic | N | Sex | M | DOB | 8/30/1965 (55) |
| Height | 6'01" | Weight | 175 | Hair | BRO | Eyes | BRO |
| S.S.N. | ___-__-____ | DL & St. | ******** | JRN# | | |
| Sub. Type | PARENT | Arrest ID | | Citation # | | |
| Notes | | | | | | |

Case No: 07-0047-21

## INVESTIGATOR

| Name | ORTIZ, JAMES | Assigned Date | 08/05/2021 | Supplement No | 0 |
|------|--------------|---------------|------------|---------------|---|

**Entered By**   BECERRIL, JAMIE

**Officer**   GONZALEZ, RAFAEL

**Supervisor**

Case No:   07-0047-21

# PERRYTON POLICE DEPARTMENT

# Incident # 07-0047-21

GONZALEZ, RAFAEL

On 7/26/21 at approximately 1008 hours, I, Sgt. R Gonzalez met with Ross Sproul DOB(2/19/74) at Perryton High School in regards to an incident that took place possibly back in February of 2021. Mr. Sproul stated he had gotten the videos from James Mireles on 6/26/21. After watching the videos Mr. Sproul identified the two male juveniles                          .                    , and Tad Pshigoda DOB(09/29/2004). Mr. Sproul stated he contacted           parents because it looked like             had been a victim of a crime. Mr. Sproul stated           parents stated that they had asked about the incident but he did not want to talk about it. Mr. Sproul also stated           parents did not wish to have the police involved.

It appears that the incident was brought up by Tad's parents and that both families have spoken already see printed out email attached.

In all three videos          appears to be the victim and Tad the aggressor. See videos attached for details. It is not certain at this time that the person recording the incident is                . All three videos involve people in the basketball team. more investigation is needed. Nothing further at this time.

## Supplement: Sgt J Ortiz

On 7/29/2021, at approximately 18:15, I, Sgt Ortiz, arrived at the Perryton Police Department to meet with parents,                                    along with their                    were advised that they, along with their           were not in custody and not being detained.  They were then advised that this would be considered a voluntary meeting and each of them were free to leave at anytime. Each of the           agreed that they understood that they were here voluntarily to speak with me and advised they understood they were free to leave at anytime. The           were then asked if they wished to speak about what happened.

           claimed that they were each aware of an incident that took place in the Perryton High School           locker room back in February of 2021.                    advised that there were several videos of the incident that involved their                    , and a teammate, Tad Pshigoda.           claimed that all of the videos were recorded within the dressing/locker room by                    These videos display three separate incidents involving Tad and           in a physical altercation.           : first video shows           pinned to the floor on           back in a corner of the locker room with Tad straddling over           . While Tad is straddling over           Tad is then observed to be thrusting his crotch into           face as   : attempts to regain   stance.           does not show to kick or place hands on Tad during the altercation before escaping and then getting to      feet, at which time the video ends.           next video begins with a recording of           on   hands and knees on the locker room floor and appears to be picking up paper from the torn pinata. The recording appears to be setup and anticipating another altercation or incident involving                    video also shows to be altered with the label "Hereford" applied to           and "Shot clock" applied to Tad and a pinata stick.  Tad is then shown to be holding a pinata stick, approaches           from behind, and then shoves the stick into the anus area of           can be seen lunging forward in order to escape the assault and yells, no.           third video begins with           · changed into   street clothing on hands and knees, again within the locker room.  Tad, also changed into his street clothing, jumps onto           back with the pinata stick in hand, again and begins to pull           sweatshirt up while attempting to shove the stick down           backside into   jeans.           attempts to escape Tad's hold by rolling onto the floor at which time Tad falls onto           head.           and Tad wrestle for control for a few moments until Tad places           into frontal headlock and eventually releases his grip once           "taps" and gives up.

           and           claimed that they had met with the Brian Pshigoda, Tamarchena Pshigoda, and Tad Pshigoda about the incident several months ago to discuss the issue.           and           ;tated that the families had agreed to not pursue the issue any further to avoid embarrassment for their           but·soon learned that the Pshigoda family had released the videos to the school. The school then

· Case No: 07-0047-21

reported the incident to the police department as required.
                    was asked if    was a willing participant in this incident at which time    stated that
these types of things happen all of the time within the locker room.        was asked if    had any
ongoing issues with Tad prior to after this incident at which time    stated, no.        was asked if at
anytime before or during the incident    exchanged words with Tad and told him to stop.
stated that    did not recall saying anything but then stated that    had no choice in what happens.
          did not want to be labeled as
          "a snitch" or appear weak to    teammates. Nothing further at this time.
Sgt Ortiz #218

Supplement: Sgt J Ortiz
          On 7/30/2021, at approximately 16:05, I, Sgt Ortiz, met with Brian Pshigoda and Tad Pshigoda
at the Perryton Police Department in regards to the aforementioned incident. Brian and Tad were both
advised that they were not under arrest nor being detained. They were each advised that this would be
considered a voluntary meeting and they were free to leave at anytime. Brian and Tad claimed that
they understood that they were not in custody, were free to leave at anytime, and agreed to a voluntary
discussion.
          Brian and Tad were asked what they were here to speak about at which time Brian began
speaking of the incident between Tad and                    Brian claimed that he was aware of the
situation and the recordings that had been sent out. Brian claimed that he believed the incident was
"boys being boys" and had considered the incident a non-issue due to already having spoken with the
          family. Brian asked to Tad to explain his part and what lead up to the incident.
          Tad began by stating the reason the incident began was due to a pinata that had been left in
the locker room. Tad claimed that the team had agreed to leave the pinata alone until the end of the
day for the seniors but        had punched a hole in the pinata prior to this. Tad claimed the team
was standing around after practice and during that time, was told that        admitted to putting a
hole in the pinata. Tad claims that several of the teammates began yelling        , then swarmed
toward        and "herded"    into the locker room. Tad claimed that no planned punishment was
discussed for    and getting    into the locker room was not done in a malicious manner.
          Tad was asked about the incidents that took place within the locker room, specifically the
videos recorded and their distribution. Tad claimed that                    recorded each of the
incidents and distributed them via the online application "SnapChat". Tad did not give details on which
teammates specifically grabbed or pushed        )nto the locker room floor but claimed that was how
          ended up on his back. Tad stated that he did place his crotch into        face while in the
corner of the locker room. Tad also admitted that it was his intention to push the stick into
"butt" which was shown in the last videos. Tad claimed that these types of incidents happen all of the
time within this same locker room and these types of things have happened to him as well. Tad
claimed that each incident is just what the boys do and everyone has been a willing participant without
complaint. Tad then went on to say that he understands that he may have gone too far in this incident
and understood that their could be repercussions for his actions. Nothing further at this time.
Sgt Ortiz #218

Supplement Sgt. R Gonzalez
          On August 3, 2021 I met with most of the boys from the Junior Varsity and Varsity Basketball
team. In regards to this incident. I contacted the parents of the boys and asked them to bring them to
the police department for questioning.
I spoke with
Hunter Millsap DOB 10/27/2004 Quit the team prior to this incident.

Daxton Rigdon DOB 8/04/2004
Cuyler Feger DOB 11/17/2003
Pablo Perez DOB 4/22/2003
Kade Gilbert DOB 9/5/2003
Macario Hernandez DOB 12/15/2003
Luis Assad DOB 3/28/2003
Gavin Laxton DOB 3/31/2003

. Case No:  07-0047-21

The boys and their parents were advised that the interview was voluntary and were free to leave at any time.

All of the boys had similar stories I did speak briefly with some of the parents that came in with the boys. What I got from the inter views was this...

The mothers of the boys in  the basketball team get together and decorate the locker room for the boys during the district games. At the time of the incident a pinata was brought in as part of the decoration. The Boys had agreed to leave the pinata for the Varsity team to break open since most of the Varsity team were Seniors and it was going to be one of their last games.        (part of the Junior Varsity team) at some point caused damage to the pinata poking a hole in it. Some of the Seniors (Varsity team) were upset about the pinata being damaged. Tad (Varsity team) took it upon himself to punish        for damaging the pinata.

All of the boys stated that, Tad and        have a friendly competitive relationship and are always picking on each other, but it had never been as bad as it was during this incident. None of the boys knew who was the one who recorded the incident.

Four of the boys were in the gym three of them stated that they had seen the videos but were not in the locker room during any of the incidents. I did not speak to one of the boys in the gym Levi Stevens was out of town and came in to speak with Sgt. Ortiz (see supplement below)

All of the Boys stated that none of the coaches were in the locker room during the incidents they were most likely in the office.

All of the interviews were recored with my body camera see videos for full details. Nothing further at this time Sgt. R Gonzalez 204.

**Supplement: Sgt J Ortiz**

On 8/5/2021, at approximately 09:10, I, Sgt Ortiz, met with Levi Stevens (DOB: 10/15/2002) in regards to the incident above. Stevens was advised that he was not detained or under arrest and free to leave at anytime during this voluntary interview. Stevens claimed that he understood and was asked why he was here to speak with me.

Stevens began speaking of the locker room incident that took place between Tad and Stevens claimed that he was not in the locker room during any of the incidents but had seen the videos. Stevens said that he watched a video where Tad placed his crotch in        face and also where        was on the floor on hands and knees. Stevens claimed that        showed him the videos from his own personal phone. Stevens was asked if        seemed upset or angry when showing him the videos at which time Stevens stated, no. Stevens claimed that        vas neither upset nor angry, and appeared to have no issues with what the videos showed to have happened.

Stevens was asked if he was aware of why the incident took place and he replied, no. Stevens was asked about any issues involving a pinata at which time Stevens claimed he believed        had damaged the pinata that was meant for the seniors. Stevens stated that he was in the gym with three other seniors while the incident took place in the locker room. Stevens stated that he had heard of the incident from other players as well as from Tad. Stevens was asked if there were any coaches supervising the locker rooms and he stated that he believed the coaches to be in their offices and not in the locker room when the incident took place.

Stevens claimed that these types of things happen all of the time between the boys within the locker room, at times less or even worse than this incident. Stevens also claimed that these incidents have all been done without a complaint and all involved were willing participants. Nothing further at this time.
Sgt Ortiz #218

**Supplement: Sgt J Ortiz**

On 8/6/2021, at approximately 12:30, I, Sgt Ortiz, met with Ramon Vela and        at the Perryton Police Department in regards to the aforementioned incident.  Ramon and        were advised that they were not in custody and free to leave at anytime.  Ramon and        claimed they understood and agreed to speak with me voluntarily.

Ramon and        were asked what they wished to tell me on this incident at which time Ramon began with he thought the incident was just "boys being boys".        advised that he did not recall who was in the locker room when the incident took place other "the team".        would not advise on who recorded the incident or what the incident involved.  Due to obvious lack of cooperation from both parties,        was asked if he recalled any details related to that day at which time he only

Case No:  07-0047-21

advised that he had observed the incident with                          and Tad, along with the videos.  Nothing further
at this time.
Sgt Ortiz #218

**Supplement: Sgt J Ortiz**
On 8/6/2021, at approximately 11:14, I, Sgt Ortiz, made contact with Chris Samples in regards
to the aforementioned incident.  Chris was asked if he and his son,          would be available to meet
with me and discuss this incident.  Chris advised that he would have to check his son's schedule and
provide an answer with a return call.  Nothing further at this time.
Sgt Ortiz #218

**Supplement: Sgt J Ortiz**
On 8/6/2021, at approximately 11:57, I, Sgt Ortiz, received a message from Chris Samples that
his                          would not be available for a meeting until next week and advised that he
would call back to setup an interview.  Nothing further at this time.
Sgt Ortiz #218

**Supplement: Sgt J Ortiz**
On 8/16/2021, at approximately 15:00, I, Sgt Ortiz, made contact with Chris Samples (806-202-
2600) in regards to the aforementioned incident.  Chris was asked if he would be able to make
arrangements to speak with me at which time he stated that he would have to check his son's schedule
and provide an answer with a return call.  Nothing further at this time.
Sgt Ortiz #218

**Supplement: Sgt J Ortiz**
On 8/17/2021 at approximately 16:32, I, Sgt Ortiz, received a return call from Chris Samples in
regards to this incident.  Chris advised that he would bring his                          to meet with me
on Thursday, August 19, 2021.  Nothing further at this time.
Sgt Ortiz #218

**Supplement: 08/18/2021**
**Due to the intentional, knowing, or reckless act, occurring on campus of an educational
institution and the physical brutality encouraged, aided, and directed against a student that
they are affiliated with, I, Sgt Ortiz. am requesting a charge for the offense of Hazing (EC
37.152) on Tad Pshigoda and**

**Supplement: Sgt J Ortiz**
On 8/19, 2021, at approximately 16:15, I, Sgt Ortiz, met with Chris Samples and
in regards to this incident.  Chris and          were advised that they were not in custody and
they were free to leave at anytime.  Chris and          both claimed to understand and agreed to speak
with me.  Chris was then asked if he was aware about this incident taking place back in February, at
which time he stated that he was unaware until receiving my phone call requesting a meeting.  Chris
advised that he had not seen the videos but believed that the incident involving an altercation between
two boys in the high school locker room.
Chris was asked if it was fine for          to give his recollection of the incident at which time
Chris advised, yes.          claimed the incident began due to          poking a hole in a pinata that
was meant to be for the varsity team.          was asked how he was aware of          poking the hole
at which time he claimed to have witnessed          with the pinata.          stated that he witnessed
Tad tackle and push          onto the locker room floor.  While          was on the floor, Tad  then
placed his crotch into the face of          as shown in the video.
was asked if he had recorded and distributed these videos.          claimed that he did
not know who had recorded the videos and that they were distributed within a team group chat
(SnapChat).          was advised that it was believed by several teammates that he had made the
recordings, as well as distributed the videos through social media.          was asked numerous times
if he had made the recordings and          continued to deny having any involvement in the recordings.
went on to state that he was at the other end of the locker room during each of the altercations.

Case No:   07-0047-21

Chris and _____ were then shown the videos and asked who they believed recorded the incident based on the camera person capturing his own voice and clothing. _____ said that he believed _____ to be the person recording based on the clothing he observed in the video. In this same video, _____ can be observed on camera at the far end of the locker room and could not possibly be working the camera. Chris did advise _____ at one point that he should be honest and forthcoming if he has any involvement in the recordings. _____ denied any involvement and would not advise on who distributed the videos.

_____ was asked if he was aware of any issues between Tad and _____ that would cause conflict between the two. _____ believed the two to be competitive towards one anther but still friends. _____ was asked if he was aware of _____ showing the videos himself to others. _____ claimed that _____ was in possession of the videos and had shown it to other classmates during school. _____ advised that _____ never appeared angry and voluntarily shared the videos of himself. Nothing further at this time.
Sgt Ortiz #218

**Supplement: Sgt J Ortiz**
On 8/19/2021, at approximately 19:07, I, Sgt Ortiz, received a message from Chis Samples for a return phone call. At approximately 19:39, contact was made with Chris Samples (8062022600) in regards to this incident. Chris advised that _____ had admitted to recording the aforementioned incident and requested another meeting. Chris was advised they were free to come in speak with me at their convenience. Nothing further at this time.
Sgt Ortiz #218

**Supplement: Sgt J Ortiz**
On 8/20/2021, at approximately 16:10, I, Sgt Ortiz, met with Chris Samples and _____ at the Perryton Police Department in regards to this incident. Chris and _____ were again advised that they were not in custody and free to leave at anytime. Chris and _____ claimed they understood and agreed to speak with me. At this time, Chris and _____ were asked what they wished to discuss. Chris stated that after our meeting the day prior, _____ felt the need to correct the statements he had made.

_____ claimed that he had recorded the incidents between Tad and . _____ also claimed that he was responsible for distributing the videos through social media (SnapChat) to members of the boys Junior Varsity and Varsity teams. _____ said he initially lied about recording and distributing the videos due to being afraid of a possible criminal charge.

_____ was asked if he recorded all three videos at which time he stated, no. _____ claimed that _____ recorded the video of Tad and _____ wrestling after changing into their street clothes. _____ claimed that he was responsible for the two videos where Tad and _____ were both still in their basketball gear. These two videos were when Tad placed is his crotch in _____ face and when Tad applied the pinata stick to _____ anus while on his hands and knees. _____ was asked why _____ was on his hand and knees at which time _____ stated that _____ was attempting to pick up pieces of trash off the floor. _____ was advised that the video recording appears to start with _____ on hands and knees, well before Tad approaches from behind _____ with the stick. _____ was then asked if he was recording _____ on hands and knees due to his anticipating another incident. _____ claimed that he began recording _____ on hands and knees because Tad "gave a nod" that something was about to occur to _____ Nothing further at this time.
Sgt Ortiz #218